1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    DAMEN D. RABB,                          No.  1:23-cv-00843-JLT-SAB (PC)

12                  Plaintiff,                FINDINGS AND RECOMMENDATIONS
                                              REGARDING DEFENDANTS'
13            v.                              EXHAUSTION MOTION FOR SUMMARY
                                              JUDGMENT
14    ESTEVEN FIGUEROA, et al.,
                                              (ECF No. 32)
15                  Defendants.

16

17            Plaintiff Isaiah J. Petillo is appearing pro se and in forma pauperis in this civil rights

18    action filed pursuant to 42 U.S.C. § 1983.

19            Currently before the Court is Defendants' motion for summary judgment for failure to

20    exhaust the administrative remedies, filed February 20, 2024.

21                                           **I.**

22                                **RELEVANT BACKGROUND**

23            This action is proceeding against Defendants Figueroa and Chavez for failure to protect

24    under the Eighth Amendment and retaliation under the First Amendment.

25            Plaintiff was represented by counsel at the time he filed the instant complaint.  (ECF No.

26    1.)

27            Defendants filed an answer to the complaint on August 28, 2023.  (ECF No. 16.)

28            On October 16, 2023, Plaintiff's attorney moved to withdraw as counsel. (ECF No. 22.)

1

1   Defendants did not oppose the motion. (ECF No. 25.) On October 20, 2023, the Court granted

2   Plaintiff's attorney's motion for leave to withdraw as counsel. (ECF No. 26.)

3          On October 30, 2023, the Court issued the operative Amended Scheduling Order. (ECF

4   No. 27.) The Court set the deadline for amending the pleadings as January 30, 2024, and the

5   deadline for filing motions for summary judgment for failure to exhaust administrative remedies

6   as February 29, 2024. (Id. at 3.)

7          On February 5, 2024, Plaintiff lodged a first amended complaint (FAC) with the Court.

8   (ECF No. 28.)  On February 8, 2024, the Court returned the proposed FAC to Plaintiff and

9   instructed him that he needed to file a motion for leave to amend the complaint or obtain

10  Defendants' consent to file an amended complaint. (ECF No. 29.)

11         On February 16, 2024, Plaintiff moved for summary judgment on the grounds that he

12  exhausted available administrative remedies. (ECF No. 30.) On February 20, 2024, the Court

13  issued findings and recommendations recommending that Plaintiff's motion for summary

14  judgment be denied. (ECF No. 31.)

15         Later that day, Defendants filed a motion for summary judgment on the grounds that

16  Plaintiff failed to exhaust available administrative remedies.[1] (ECF No. 32.)

17         On February 23, 2024, Plaintiff filed the instant motion for leave to amend the complaint.

18  (ECF No. 33.) Plaintiff's motion was not accompanied by a proposed amended complaint, but on

19  March 14, 2024, Plaintiff submitted a proposed amended complaint which is the same proposed

20  complaint constructively filed on January 30, 2024.[2]  (ECF No. 36.)  Defendants filed an

21  opposition on March 4, 2024.  (ECF No. 35.)  On March 25, 2024, Findings and

22  Recommendations were issued to deny Plaintiff's motion for leave to amend the complaint.  (ECF

23  No. 39.)

24  _____

    [1] The motion was accompanied by a Rand warning, pursuant to Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), Rand
25  v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988), as well as the
    requirements for filing an opposition pursuant to Local Rule 260. (ECF No. 32-2.)

26  [2] Under the "mailbox rule," when a pro se inmate gives prison authorities a pleading to mail to court, the Court
    deems the pleading constructively "filed" on the date it is signed.  Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th
27  Cir. 2010); Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule applies to § 1983 suits
    filed by pro se prisoners").

28

1   Plaintiff did not file an opposition and the time to do so has passed.  Local Rule 230(l).

2   Accordingly, Defendants' motion for summary judgment is deemed submitted for review.  (Id.)

3   **II.**

4   **LEGAL STANDARD**

5   **A.      Statutory Exhaustion Requirement**

6   The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such

7   administrative remedies as are available" before commencing a suit challenging prison

8   conditions."   42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An

9   inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.").

10  Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies

11  persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there

12  are no 'remedies … available,' and the prisoner need not further pursue the grievance."  Brown v.

13  Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532

14  U.S. 731, 739 (2001)).

15  This statutory exhaustion requirement applies to all inmate suits about prison life, Porter

16  v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by

17  the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and

18  unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing

19  Porter, 534 U.S. at 524).

20  The failure to exhaust is an affirmative defense, and the defendants bear the burden of

21  raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca,  747 F.3d

22  1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of

23  the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at

24  1166.  Otherwise, the defendants must produce evidence proving the failure to exhaust, and they

25  are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the

26  light most favorable to the plaintiff, shows he failed to exhaust.  Id.

27  ///

28  ///

3

1          **B.      Summary Judgment Standard**

2          Any party may move for summary judgment, and the Court shall grant summary judgment

3    if the movant shows that there is no genuine dispute as to any material fact and the movant is

4    entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino,

5    747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each

6    party's position, whether it be that a fact is disputed or undisputed, must be supported by (1)

7    citing to particular parts of materials in the record, including but not limited to depositions,

8    documents, declarations, or discovery; or (2) showing that the materials cited do not establish the

9    presence or absence of a genuine dispute or that the opposing party cannot produce admissible

10   evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may

11   consider other materials in the record not cited to by the parties, although it is not required to do

12   so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031

13   (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

14         The defendants bear the burden of proof in moving for summary judgment for failure to

15   exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available

16   administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.

17   If the defendants carry their burden, the burden of production shifts to the plaintiff "to come

18   forward with evidence showing that there is something in his particular case that made the

19   existing and generally available administrative remedies effectively unavailable to him."  Id.  "If

20   the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to

21   exhaust, a defendant is entitled to summary judgment under Rule 56."  Id. at 1166.  However,

22   "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather

23   than a jury should determine the facts."  Id.

24         In arriving at this Findings and Recommendation, the Court carefully reviewed and

25   considered all arguments, points and authorities, declarations, exhibits, statements of undisputed

26   facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of

27   reference to an argument, document, paper, or objection is not to be construed to the effect that

28   this court did not consider the argument, document, paper, or objection. This Court thoroughly

4

1    reviewed and considered the evidence it deemed admissible, material, and appropriate.

2                                              **III.**

3                                          **DISCUSSION**

4        **A.      Allegations of Operative Complaint**

5        On June 3, 2022, at approximately 1600 hours at Kern Valley State Prison (KVSP),

6    Defendants told other inmates that Plaintiff is a violent sexual predator and was convicted of a

7    sex offense.  Plaintiff contends that he filed a grievance against Defendants for disclosing his sex

8    offense and was subsequently attacked by inmates "at the direction of CDCR officers."

9        **B.      Statement of Undisputed Facts[3,4]**

10       1.      Plaintiff is a California inmate who was incarcerated at KVSP in Delano,

11   California, from June 3, 2022, to June 7, 2022, when he transferred to WSP, where he remained

12   until August 29, 2022.  (Declaration of Jennifer Burns (Burns Decl.), Ex. B at 1.)

13       2.      An administrative grievance process was available to Plaintiff while he was

14   housed at KVSP and WSP.  (Declaration of F. Marquez (Marquez Decl.) ¶ 2; Declaration of A.

15   Leyva (Leyva Decl.) ¶ 2.)

16       3.      CDCR provides an administrative grievance process for inmate complaints in

17   accordance with Title 15 of the California Code of Regulations (CCR).  (Declaration of Howard

18   E. Moseley (Moseley Decl.) ¶ 6; Declaration of C. Bonfill (Bonffil Decl.) ¶ 2; Marquez Decl. ¶ 2;

19   Leyva Decl. ¶ 2; Declaration G. Lujan (Lujan Decl.) ¶ 2.)

20       4.      If filing a grievance on or after June 1, 2020, an offender is required to follow the

21   procedures set forth in CCR, Title 15, sections 3480-3487 (effective June 1, 2020).  (Moseley

22   Decl. ¶ 6; Marquez Decl. ¶ 2; Leyva Decl. ¶ 2; Bonfill Decl. ¶ 2; Lujan Decl. ¶ 2.)

23   _____

[3] Hereinafter referred to as "UF."

24

[4] Plaintiff neither admitted or denied the facts set forth by defendant as undisputed nor filed a separate statement of
25   disputed facts.  Local Rule 56-260(b).  Therefore, the Court was left to compile the summary of undisputed facts
     from defendants' statement of undisputed facts and Plaintiff's verified complaint.  A verified complaint in a pro se
26   civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the
     complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief.
27   McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423
     (9th Cir. 1985); F.R.C.P. 56(e).  Because Plaintiff neither submitted his own statement of disputed facts nor
28   addressed Defendants' statement of undisputed facts, the court accepts Defendants' version of the undisputed facts
     where Plaintiff's verified complaint is not contradictory.

5.      The grievance process has two levels of review.  (Marquez Decl. ¶ 2; Leyva Decl. ¶ 2; Bonfill Decl. ¶ 2; Lujan Decl. ¶ 2.)

6.      This process requires the inmate to submit an official CDCR Form 602-1 to the Institutional Office of Grievances (OOG) at the prison where the inmate is housed.  (Marquez Decl. ¶ 2; Leyva Decl. ¶ 2; Bonfill Decl. ¶ 2; Lujan Decl. ¶ 2.)

7.      If the inmate wishes to appeal the Institutional OOG decision, they may do so in writing to the Office of Appeals (OOA).  (Marquez Decl. ¶ 2; Leyva Decl. ¶ 2; Bonfill Decl. ¶ 2; Lujan Decl. ¶ 2.)

8.      A final decision by the OOA is required to exhaust an inmate grievance.  (Marquez Decl. ¶ 2; Leyva Decl. ¶ 2; Bonfill Decl. ¶ 2; Lujan Decl. ¶ 2.)

9.      This process was available to all inmates at KVSP and WSP after June 1, 2020. (Marquez Decl. ¶ 2; Leyva Decl. ¶ 2.)

10.     In grievance log no. 265387, Plaintiff complained that on June 3, 2022, Defendants disclosed to other inmates that Plaintiff had a sex offense.  (Leyva Decl., Ex. 1 at 1.)

11.     On June 15, 2022, the OOG categorized the grievance as an allegation of staff misconduct and referred it to an appropriate authority within the California Department of Corrections and Rehabilitation (CDCR) for review, which exhausted all available administrative remedies for allegations in this grievance.  (Leyva Decl., Ex. 1 at 2.)

12.     Plaintiff submitted a grievance that contain allegations that he was attacked by other inmates at WSP. In grievance log no. 280132, Plaintiff alleged that on July 7, 2022 at WSP, inmates attacked him when a control booth officer opened his cell door. Plaintiff alleged that WSP "shared in a partnership with [KVSP] personnel" who "employed efforts to have [him] harmed by the inmate-class."  (Marquez Decl., Ex. 4 at 1-2.)

13.     On July 27, 2022, the OOG categorized the grievance as an allegation of staff misconduct and referred it to an appropriate authority within the CDCR for review, which exhausted all available administrative remedies for allegations in this grievance.  (Marquez Decl., Ex. 4 at 7.)

///

14.     Between June 3, 2022 (the date the incidents in the complaint allegedly occurred) and June 1, 2023 (the date Plaintiff filed the complaint), Plaintiff filed ten other inmate grievances, three of which were reassigned new log numbers: (1) log no. 405102; (2) log no. 405392; (3) log no. 404214; (4) log no. 396848; (5) log no. 392413; (6) log no. 389269; (7) log no. 383440; (8) log no. 376838; (9) log no. 369118; (10) log no. 357680; (11) log no. 351998; (12) log no. 304930; and (13) log no. 284686.  (Moseley Decl., Ex. 1, 2.)

15.     In grievance log no. 405102 submitted on May 30, 2023, Plaintiff alleged he was wrongfully found guilty of disobeying a direct order during an unrelated disciplinary hearing. (Bonffil Decl., Ex. 1; Moseley Decl., Ex. 3.)

16.     In grievance log no. 404214, submitted on May 26, 2023, Plaintiff alleged WSP officials failed to re-issue an inmate grievance regarding his personal property. The grievance was re-directed to WSP and assigned grievance log no. 405392.  (Bonffil Decl., Ex. 2; Marquez Decl., Ex. 1; Moseley Decl., Exs. 4, 5.)

17.     In grievance log no. 396848, submitted on May 8, 2023, alleges the investigation and decision from grievance log no. 357680 was insufficient and incorrect.  (Bonffil Decl., Ex. 3; Moseley Decl., Ex. 6.)

18.     In grievance log no. 392413, submitted on April 26, 2023, Plaintiff alleged he was wrongfully found guilty of an unrelated rules violation report (log no. 7249511).  (Bonffil Decl., Ex. 4; Moseley Decl., Ex. 7.)

19.     In grievance log no. 304930, submitted on September 14, 2022, Plaintiff alleged that on August 29, 2022, his personal property was destroyed. The grievance was re-directed to WSP and assigned grievance log no. 389269.  (Bonffil Decl., Ex. 9; Marquez Decl., Ex. 2; Moseley Decl., Exs. 8, 12.)

20.     In grievance log no. 383440, submitted on April 4, 2023, Plaintiff alleged a correctional counselor retaliated against him by falsifying a rules violation report.  (Bonffil Decl., Ex. 5; Moseley Decl., Ex. 9.)

21.     In grievance log no. 376838, submitted on March 17, 2023, Plaintiff alleged that on March 16, 2023, a correctional officer threatened to issue Plaintiff with a rules violation if he

1    did not meet with his correctional counselor.  (Bonffil Decl., Ex. 6.)

2          22.      In grievance log no. 369118, submitted on February 27, 2023, Plaintiff alleged that

3    since his initial incarceration with CDCR, he has filed numerous inmate grievances alleging

4    various and unspecified incidents of staff misconduct.  (Bonffil Decl., Ex. 7; Moseley Decl., Ex.

5    10.)

6          23.      In grievance log no. 351998, submitted on January 12, 2023, Plaintiff alleged that

7    while at the California Correctional Institution (CCI) on December 16, 2022, correctional officers

8    used unnecessary force on him, placed him in a flooded cell, and mishandled his property. He

9    also alleged officers used unnecessary force on him in 2013, when he was housed at the

10   California Substance Abuse Treatment Facility (SATF).  (Bonffil Decl., Ex. 8; Lujan Decl., Ex. 1;

11   Moseley Decl., Ex. 11; Burns Decl., Ex. B at 2.)

12         24.      Accordingly, grievance log no. 351998 was re-directed in part to SATF and

13   assigned grievance log no. 357680.  (Lujan Decl., Ex. 1.)

14         25.      In grievance log no. 284686 submitted on July 26, 2022, Plaintiff alleged that his

15   property was mishandled on July 7, 2022, when he was moved into the Administrative

16   Segregation Unit.  (Marquez Decl., Ex. 3.)

17         **C.      Description of CDCR's Administrative Remedy Process**

18         CDCR provides an administrative grievance process for inmate complaints in accordance

19   with Title 15 of the California Code of Regulations (CCR). (UF 3.) If filing a grievance on or

20   after June 1, 2020, an offender is required to follow the procedures set forth in CCR, title 15,

21   sections 3480-3487 (effective June 1, 2020). (UF 4.) The grievance process has two levels of

22   review. (UF 5.) This process requires the inmate to submit an official CDCR Form 602-1 to the

23   Institutional Office of Grievances (OOG) at the prison where the inmate is housed. (UF 6.) If the

24   inmate wishes to appeal the Institutional OOG decision, they may do so in writing to the Office of

25   Appeals (OOA). (UF 7.) A final decision by the OOA is required to exhaust an inmate grievance.

26   (UF 8.) This process was available to all inmates at KVSP and WSP after June 1, 2020. (UF 9.)

27   ///

28   ///

8

**D.      Analysis of Defendants' Motion**

Defendants argue Plaintiff never filed a grievance alleging that Defendants' alleged disclosure of his sex conviction caused Plaintiff to be attacked by other inmates or that Defendants retaliated against Plaintiff.

In the operative complaint, Plaintiff indicates that he exhausted the administrative remedies with respect to his claims.  (ECF No. 1 at 6-7.)  Plaintiff specifically states he filed log no. 265387 and "detailed his experience by disclosing the names of both defendants and described the events."  (Id. at 7.)

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. Farmer v. Brennan, 511 U.S. 825, 832 (1994).  In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Id. at 833; Cortez v. Skol, 776 F. 3d 1046, 1050 (9th Cir. 2015); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005); Gillespie v. Civiletti, 629 F.2d 637, 642 & n.3 (9th Cir. 1980). The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 834.  A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. Id. at 837.

A prisoner may state a section 1983 claim under the Eighth Amendment against prison officials only where the officials acted with "deliberate indifference" to the threat of serious harm or injury to an inmate by another prisoner, Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986); see also Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor that prisoner is snitch may state claim for violation of right to be protected from violence while in state custody), or by physical conditions at the prison. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. See Farmer, 511 U.S. at 837.  However, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually

1   would befall an inmate; it is enough that the official acted or failed to act despite his knowledge

2   of a substantial risk of serious harm. Id. at 842; see also Lemire v. Cal. Dept. Corrections &

3   Rehabilitation, 726 F.3d 1062, 1078 (9th Cir. 2013) (articulating two-part test for deliberate

4   indifference: plaintiff must show, first, that risk was obvious or provide other evidence that prison

5   officials were aware of the substantial risk to the inmates' safety, and second, no reasonable

6   justification for exposing inmates to risk).

7       "It is well-established that, among the rights they retain, prisoners have a First

8   Amendment right to file prison grievances ... [, and r]etaliation against prisoners for their exercise

9   of this right is itself a constitutional violation." Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir.

10   2009) (citations omitted). A claim of retaliation under the First Amendment has five elements:

11   "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3)

12   that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

13   Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

14   Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

15       1.      Grievance Log No. 265387

16       In grievance log no. 265387, Plaintiff alleged as follows:

17       On the date of 6-30-2022, at approximately 1500 hours, on Facility (A), Building 2, Kern
18       Valley State Prison, I observed (heard) custody officer Figuoroa [sic] disclose my
        (claimant) iden[t]ity by reference to events that occur[r]ed on the housing unit earlier that
19       day. Two sets of sergeants contacted me. One for a letter I had written to the Office of
        Internal Affairs asking that no reprisal be imposed by Facility (A) for having wrote a 602
20       complaint reg[a]rding my legal mail. And the second, sgt. came asking if I can walk  I
        cannot!
21

22       The sergeants presence on the unit seemingly caused a disturbance. see:AVSS Footage 9
        am-11 am. Claimant did in fact hear said officer detail that I was age twenty upon 290
23       registry, and classified a VSP (Violent Sexual Predator). On the same evening (6-3-
        2022), correctional officer Chavez, and partner to correctional officer Figuoroa [sic];
24       while conducting nine o'clock institutional county, was asked by an inmate in ajoining
        [sic] cell if what c/o Figuoroa [sic] told other inmates about "Rabb" true. C/o Chavez
25       satisfied said question with a affirming head nod, and what sound to be praises to god
        (literally). The time was approximately 9:10 p.m. see:AVSS Footage 9 pm-9:30 pm/6-3-
26       2022. Further, custody officer(s) are equipped with bodycameras at KVSP.

27   (Leyva Decl. Ex. 1.) (submitted

28

This appeal specifically named both Defendants Chavez and Figueroa and provided adequate notice of the alleged Eighth Amendment deprivation-disclosure of Plaintiff's sex offense in deliberate indifference to a substantial risk of serious harm to Plaintiff.[5]  Defendants' argue this grievance did not mention any attack.  However, Plaintiff need not await actual harm to state a cognizable deliberate indifference claim based on disclosure of Plaintiff's sex offense to other inmates.  See Farmer v. Brennan, 511 U.S. at 842 (an Eighth Amendment claimant need not show, however, that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm).  Thus, Plaintiff's appeal did not need to allege that he was actually, in fact, assaulted as a result of Defendants' statements.  Therefore, Plaintiff's appeal adequately placed the prison on notice of nature of the wrong alleged in the present Eighth Amendment claim. Prison officials rendered a decision on the merits of the grievance at each available step of the administrative process. Accordingly, Plaintiff exhausted available administrative remedies.

Conversely, this grievance does exhaust Plaintiff's separate and independent retaliation claims against Defendants Chavez and Figueroa.  This grievance concerns Defendants' action in disclosing to other inmates that Plaintiff is a sex offender.  There are no factual statements which would have put prison officials on notice that Plaintiff contended Defendants were retaliating against him for any First Amendment activity.  See Walton v. Hixson, No. CIV S-09-1246 GEB

---

[5] Courts have routinely found that labeling of inmate as sex offender implicates safety concerns.  See Johnson v. Robinson, No. 2:12-CV-2400-WBS (DAD), 2015 WL 882021, at *14 (E.D. Cal. Mar. 2, 2015) (finding defendant's intentional, retaliatory misclassification of plaintiff as a sex offender sufficiently stated a claim for deliberate indifference, noting "the seriousness of the 'sex offender' label in prison is tangible enough to support, in certain circumstances, a claim that a defendant used the dangerous implications of that label or ignored them in deliberate indifference to an inmate's safety"); Knight v. Runnels, No. CIV S-07-0751-FCD-CMK, 2007 WL 2390139 at *2 (E.D. Cal. Aug. 20, 2007) (finding both prongs of a deliberate indifference claim sufficiently pled where plaintiff "allege[d] that this defendant put a 'R-suffix' in his file knowing that, if plaintiff was put in the general population, he would be stabbed"); Sims v. Woodford, No. 1:05-cv-1523-LJO-DLB (PC), 2008 WL 669943 at *5 (E.D. Cal. Mar. 7, 2008) (denying a motion to dismiss under Rule 12(b)(6) where the plaintiff had pled that "defendants errantly classified him as a convicted sex offender, and failed to remove that classification subsequent to correspondence from the court to the contrary"); Nailing v. Fosterer, No. CIV S-09-2475-MCE-CMK, 2012 WL 1130655 at *8 (E.D. Cal. Mar. 2, 2012) (finding a cause of action sufficiently pled because "a reasonable jury could conclude that defendants were deliberately indifferent to the generally known risk sex offenders face in the prison general population").

CKD P, 2011 WL 6002919, at *2 (E.D. Cal. Nov. 30, 2011) (inmate's grievance complaining

about prison official's interference with his praying did not alert prison to his claim that

interference was in retaliation for submitting a grievance against the official); Martinez v. Adams,

No. 1:09cv00899LJODLB, 2010 WL 3912359, at *5 (E.D. Cal. Oct. 5, 2010) (inmate's

grievances did not exhaust his retaliation claim when they did not "mention retaliation or set forth

facts that would alert a prison official to retaliatory conduct for protected activity"); Gilbert v.

Fernald, No. CV 20-1269-SVW (KS), 2022 WL 18776165, at *8 (C.D. Cal. Dec. 29, 2022)

(holding that the plaintiff's grievance did not exhaust his retaliation claim because the grievance

only notified the prison that the defendant engaged in sexual misconduct, not that the defendant

engaged in such conduct in retaliation for the plaintiff asserting his First Amendment right).

Accordingly, this grievance did not serve to exhaust Plaintiff's retaliation claim against

Defendants Chavez and Figueroa.

       2.     Grievance Log No. 280132

In grievance log no. 280132, Plaintiff alleged as follows:

> This grievance should act as a official staff complaint against parties directly involved in the matter described herein, and the custodial supervisor(s) on Facility (B) on the date of 7-7-2022; and should be regarded as a prerequisite to civil proceedings under U.S.C. 1983.

> On the morning of 7-7-2022, while an inmate under the charge of Wasco State Prison Facility (B), unit three; tower control officer(s) on said unit, maliciously/negligently open my then assign cell (#138) for inmates, whom than [sic] entered said cell and began brutally stabbing and beating me, and my then cell-mate (I/M Agular #BS0612). Note: I sustain a stab wound in this incident; and my knee injury was worsten [sic] by the attack and attempt to cause harm by the two attacking inmates.

> Despite my pleas for help (my knee had totally given out, leaving me vulnerable to further injury; I was sprayed with a chemical agent, and antagonized by responding custodial staffer(s), as I was trampled while on the dayroom floor in a prone position.) I was treated with an over zealous show of force. Following my medical evaluation and x-rays, I was ushers [sic] back to Facility (B) patio, where I was contacted by one: S. Sanchez, Lt. whom provided that a weapon was found in cell #138. More specifically, he stated that following said incident; that of which occur[r]ed within my assign cell (138), and the reason why custody officers did not anesially [sic] identify my cell-mate (Mr. Aguilar) as having been victimized; a weapon was discover by staff, and because of said weapon being found within my living quarters; despite my injury, that I'd be retain to ASU (Administrative Segregation Unit).

1

2          Note: Part (B) of the administrative review packed provides a option to be appointed a
           investigative employee.  The "lock-up" order provided to me by one: J Guerra, captain
3          was prepared prior to him coming to serve me.  The document states that I decline such
           assistance.  I would never do such a thing! (emphasis added.)  I was not given this option,
4          if I had been I'd excepted [sic], and signed my acknowledgement./Documents attached 2
           pages/The appointment of a staff assistance/investitive employee or internal affairs fact-
5          finder is in fact relevant in this matter in order to establish the record.  To date, Wasco
           State Prison officials have leisurely imposed deliberate indifference towards myself, and
6          the obvious (The Facts!) such indifferent clearly supports the narrative perpetuated by a
           current staffer amongst the custody-class, that threaten harm upon me on 7-1-2022, at
7          (WSP), and shared in a partnership with (KVSP) personnel whom there employed efforts
           to have me harmed by the inmate-class, and is currently under investigation.  Note: I have
8          recorded all essential information to support my claim(s), and have secured witness(s).  A
           investigative employee would have been assign the task to up-root the blatant
9          demonstration of systematic reprisal detailed above.

10
           In conclusion: I'm unlawfully and maliciously being retain to (ASU) by (WSP) in a
11         attempt to prohibit a showing of malicious mistreatment and negligence by Facility (B),
           unit 3, staff, on the above date, and the misapplied charge of weapon possession is in fact
12         an insult, considering staff participated in trying to have me killed.  (You open my cell
           and let inmates in to stab[ ] me!)
13

14   (Marquez Decl., Ex. 4.)

15          This grievance does not exhaust either of Plaintiff's claims against Defendants Chavez

16   and Figueroa.  The grievance does not mention Defendants, retaliation, or retaliatory intent or

17   motive, or disclosure to other inmates that Plaintiff has a sex offense.  (Marquez Decl., Ex. 4.)

18   Although this grievance alleged that on July 7, 2022 at WSP, inmates attacked him when a

19   control booth officer opened his cell door. Plaintiff alleged that WSP "shared in a partnership

20   with [KVSP] personnel" who "employed efforts to have [him] harmed by the inmate-class[,]"

21   such allegation is too vague to place the prison on notice of Plaintiff's deliberate indifference and

22   retaliation claims in this case.  Indeed, the allegations in grievance log no. 280132 takes place at

23   an entirely different institution and only vaguely claims that officers at KVSP have also tried to

24   have Plaintiff harmed by other inmates.  (UF 13.)  In addition, this grievance specifically

25   acknowledges that the allegations against KVSP officers is "currently under investigation" which

26   lends support to the finding that Plaintiff exhausted his deliberate indifference claim against

27   Defendants in grievance log no. 265387.

28

                                          13

3.      Other Grievances Filed Between June 3, 2022 and June 1, 2023

It is undisputed that between June 3, 2022 (the date the incidents in the complaint alleged took place) and June 1, 2023 (the date Plaintiff filed the instant complaint), Plaintiff filed ten other inmate grievances, three of which were reassigned new log numbers: (1) log no. 405102; (2) log no. 405392; (3) log no. 404214; (4) log no. 396848; (5) log no. 392413; (6) log no. 389269; (7) log no. 383440; (8) log no. 376838; (9) log no. 369118; (10) log no. 357680; (11) log no. 351998; (12) log no. 304930; and (13) log no. 284686. (UF 14.)  None of these grievances include allegations that Defendants failed to protect Plaintiff or retaliated against him. (UF 15-25.)

In grievance log no. 405102, submitted on May 30, 2023, Plaintiff alleged he was wrongfully found guilty of disobeying a direct order during an unrelated disciplinary hearing. (UF 15.)

In grievance log no. 404214, submitted on May 26, 2023, Plaintiff alleged WSP officials failed to re-issue an inmate grievance regarding his personal property. (UF 16.) The grievance was re-directed to WSP and assigned grievance log no. 405392. (Id.)

In grievance log no. 396848, submitted on May 8, 2023, alleges the investigation and decision from grievance log no. 357680 was insufficient and incorrect. (UF 17.)

In grievance log no. 392413, submitted on April 26, 2023, Plaintiff alleged he was wrongfully found guilty of an unrelated rules violation report (log no. 7249511). (UF 18.)

In grievance log no. 304930, submitted on September 14, 2022, Plaintiff alleged that on August 29, 2022, his personal property was destroyed. (UF 19.) The grievance was re-directed to WSP and assigned grievance log no. 389269. (Id.)

In grievance log no. 383440, submitted on April 4, 2023, Plaintiff alleged a correctional counselor retaliated against him by falsifying a rules violation report. (UF 20.)

In grievance log no. 376838, submitted on March 17, 2023, Plaintiff alleged that on March 16, 2023, a correctional officer threatened to issue Plaintiff with a rules violation if he did not meet with his correctional counselor. (UF 21.)

///

14

In grievance log no. 369118, submitted on February 27, 2023, Plaintiff alleged that since his initial incarceration with CDCR, he has filed numerous inmate grievances alleging various and unspecified incidents of staff misconduct. (UF 22.)

In grievance log no. 351998, submitted on January 12, 2023, Plaintiff alleged that while at the California Correctional Institution (CCI) on December 16, 2022, correctional officers used unnecessary force on him, placed him in a flooded cell, and mishandled his property. (UF 23.) He also alleged officers used unnecessary force on him in 2013, when he was housed at the California Substance Abuse Treatment Facility (SATF). (Id.)  Accordingly, the grievance was re-directed in part to SATF and assigned grievance log no. 357680. (UF 24.)

In grievance log no. 284686, submitted on July 26, 2022, Plaintiff alleged that his property was mishandled on July 7, 2022, when he was moved into the Administrative Segregation Unit. (UF 25.)

In sum, the above ten grievances did not serve to exhaust Plaintiff's deliberate indifference and retaliation claims against Defendants Chavez and Figueroa, but grievance log no. 265387 exhausted Plaintiff's deliberate indifference claim against both Defendants.

**IV.**

**RECOMMENDATIONS**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.    Defendants' motion for summary judgment for failure to exhaust the administrative remedies be denied as to Plaintiff's deliberate indifference claim;

2.    Defendants' motion for summary judgment for failure to exhaust the administrative remedies be granted as to Plaintiff's retaliation claim and this claim be dismissed from the action, without prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections

within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772

F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 4, 2024**

UNITED STATES MAGISTRATE JUDGE